91430-104383
JJS
5535

JUL 26 2002

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

NORFOLK SOUTHERN RAILWAY
COMPANY

Three Commercial Place
Norfolk, Virginia 23510-9241

    **Plaintiff**

v.

CITY OF MAPLE HEIGHTS, OHIO;
THE CITY COUNCIL OF MAPLE
HEIGHTS, OHIO; THE HONORABLE
SANTO T. INCORVAIA, as Mayor of
Maple Heights, Ohio,

5353 Lee Road
Maple Heights, Ohio 44137

    **Defendants**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.  **1:02CV 1468**

JUDGE  **JUDGE NUGENT**

**VERIFIED COMPLAINT FOR**
**INJUNCTIVE RELIEF,**
**DECLARATORY RELIEF, AND**
**DAMAGES**

MAG. JUDGE VECCHIARELLI

    Plaintiff, Norfolk Southern Railway Company ("Norfolk Southern" or "Plaintiff"), for itself,

hereby submits this verified complaint for injunctive relief, declaratory relief, and damages against

Defendants, and alleges as follows:

## PARTIES

    1.    Plaintiff Norfolk Southern Railway Company is a Virginia corporation with its

principal office located at Three Commercial Place, Norfolk, Virginia.

    2.    Defendant City of Maple Heights ("defendant City") is a municipal corporation

located in the State of Ohio.  The City of Maple Heights City Hall is located at 5353 Lee Road,

Maple Heights, Ohio. The City of Maple Heights may be served with process by service upon the Honorable Santo T. Incorvaia, Mayor and Chief Executive of Maple Heights, Ohio, who has offices at 5353 Lee Road, Maple Heights, Ohio. Defendant City of Maple Heights includes all of its agents, representatives, employees, officials and officers. The City of Maple Heights is subject to the jurisdiction of this Court.

3. Defendant City Council of the City of Maple Heights, Ohio ("defendant Council"), is the governing authority of the City of Maple Heights, Ohio, and has offices at 5353 Lee Road, Maple Heights, Ohio. The Council and its members may be served with process by service upon the President of the Council, defendant Jeffrey A. Lansky, who has offices at 5353 Lee Road, Maple Heights, Ohio. The Council's members are defendants Jeffrey A. Lansky; Paul O. Priebe, III; Theodore E. Lockmiller, Jr.; Frank C. Artino, Jr.; Michael A. White; Richard A. Taylor; Michelle R. Lowery; B. Lee Miami. The City Council, its President, and the members are subject to the jurisdiction of this Court.

4. Defendant the Honorable Santo T. Incorvaia, is the Mayor and Chief Executive of Maple Heights, Ohio ("defendant Mayor"), has an office at 5353 Lee Road, Maple Heights, Ohio, and may be served with process by service at that address. He is subject to the jurisdiction of this Court.

**JURISDICTION**

5. Jurisdiction of this matter is appropriate under 28 U.S.C. § 1332. Norfolk Southern and Defendants are citizens of different states, and the amount in controversy between the parties exceeds $75,000, exclusive of interest and costs.

6. Jurisdiction of this matter is also appropriate under 28 U.S.C. § 1331. The City of Maple Heights Noise Ordinance and Defendants' actions as alleged herein are regulatory in nature

2

and federally preempted by the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 10101 *et seq.* ("ICCTA") and the Noise Control Act, 42 U.S.C. § 4901, *et seq.* ("NCA"), thus presenting a federal question.

7. Jurisdiction of this matter is also appropriate under 28 U.S.C. § 2201. Norfolk Southern seeks injunctive relief permanently restraining Defendants from 1) issuing citations to or arresting Plaintiff or any of its employees, agents or contractors utilizing the City of Maple Heights' Codified Ordinances so as to interfere with, delay, obstruct or regulate Plaintiff's operation of an intermodal transport facility owned by Norfolk Southern located at 5300 Greenhurst Avenue in the City of Maple Heights, Ohio ("Facility") and 2) otherwise prohibiting, interfering with, delaying, obstructing or regulating Norfolk Southern's operation and/or use of the Facility. Norfolk Southern further seeks declaratory relief declaring the rights of Norfolk Southern and Defendants as to an Agreement for Development of Intermodal Facility in the City of Maple Heights, Ohio entered into between Norfolk Southern and Defendants on November 3, 2000 ("Agreement"). A true and accurate copy of the Agreement will be filed with this Court under seal for confidentiality reasons.

## VENUE

8. Venue is appropriate in this district and this division of this district pursuant to 28 U.S.C. § 1391 as one or more defendants reside in the Eastern Division of the Northern District of Ohio and the property that is the subject of this action is situated in the Eastern Division of the Northern District of Ohio.

## FACTS

9. In early 2000, Norfolk Southern sought to develop an intermodal facility (i.e., a train-truck terminal) on property it owned or in which it had a leasehold interest within the municipal boundaries of the City of Maple Heights, Ohio, to improve its ability to coordinate intermodal

transportation of cargo involving transport by both rail and common carrier through interstate commerce and, incident to that interstate commerce, through the City of Maple Heights and its vicinity.

10. Despite Norfolk Southern's best efforts, Defendants would not allow Norfolk Southern to construct such a facility, thus Norfolk Southern sued these same Defendants in federal court arguing that the Defendants' actions were preempted by federal law.

11. In November, 2000, Norfolk Southern and Defendants entered into the Agreement as a settlement and compromise of matters more fully set out in *Norfolk Southern Corporation vs. City of Maple Heights,* Case No. 1:00 CV 1626 in the United States District Court, Northern District of Ohio, Eastern Division before the Honorable Patricia A. Gaughan.

12. Case No. 1:00 CV 1626 was dismissed, without prejudice, by stipulation of the parties. Soon thereafter, Norfolk Southern broke ground in November, 2000, to construct the Facility.

13. At page 5, the Agreement contains the following language:

> "1.3    The City further acknowledges that Norfolk Southern's use of the property as an Intermodal facility/terminal as designed in the attached site and landscaping plans does not create a nuisance to the City of Maple Heights.

14. Norfolk Southern commenced day-to-day operations at the Facility on July 2, 2001. Norfolk Southern, although not believed to be required, was granted an Occupancy Permit by the City on February 20, 2002. A copy is attached hereto as Exhibit "A". The Occupancy Permit reflects that its stated conditions are subject to the Agreement, including section 1.3 at page 5 of the Agreement.

4

15.     The Facility is utilized to coordinate the intermodal transportation of cargo involving transport by both rail and common carrier through interstate commerce. This is the newest intermodal facility being operated by Norfolk Southern. The Facility is critical to intermodal transportation in northern Ohio. Further, the intermodal transport operations of this particular facility has a significant impact on rail transportation from the east coast throughout the Midwest. Consequently, its role in interstate commerce is vital to Norfolk Southern, its customers and the general public. (*See* Affidavit of Richard Mikulski, attached as Exhibit "B").

16.     Because of the nature of the Facility - the operation of trucks and trains - and it being a place where trailers are loaded and unloaded from rail cars and trucks, the normal operations of the Facility inherently generate noise. It would not be possible for the Facility to operate and conduct normal business without generating noise.

17.     On June 14, 2002, a City of Maple Heights police officer, while acting within the course and scope of his employment with the Defendant City of Maple Heights, entered onto the Facility's premises and ordered Norfolk Southern's employees, agents, or contractors to cease all operations at the Facility or face being arrested. The police officer informed Norfolk Southern employees, agents or contractors that their actions in conducting Norfolk Southern's business activities at the Facility produced too much noise and were in violation of the City of Maple Heights' Noise Ordinance. (*See* Affidavit of Richard Mikulski, attached as Exhibit "B").

18.     Facing the threat of being arrested, the Norfolk Southern employees, agents or contractors were forced to cease operations at the Facility on June 14, 2002, until the next business day. As a result, thirty-eight (38) outbound loaded containers, plus additional empties, many destined for east and west coast ports and scheduled ship sailing dates, were not loaded onto railcars in time

5

to make their outbound trains. Consequently, many shipments were not timely delivered to Norfolk Southern customers. (*See* Affidavit of Richard Mikulski, attached as Exhibit "B").

19.     After the shut down of the Facility on June 14, the City and its officials notified Plaintiff that its individual workers (including employees, agents and independent contractors) would be cited if the operations at the Facility generated noise in violation of the City of Maple Heights Noise Ordinance. Statements made by City officials to a Cleveland Plain Dealer reporter confirmed the City's intentions as reflected in a July 13, 2002, Cleveland Plain Dealer article. A true and accurate copy of the Cleveland Plain Dealer article is attached hereto as Exhibit "C."

Finally, on July 18, 2002, the City's Law Director notified Norfolk Southern via written correspondence that its intentions were to enforce its ordinances against Norfolk Southern for noise generated from the Facility. The July 18 letter confirmed the City's statements to the Cleveland Plain Dealer.

**COUNT I**

**PRELIMINARY AND PERMANENT INJUNCTION**

20.     Norfolk Southern incorporates by reference Paragraphs 1 through 19 of its Verified Complaint as if fully set forth herein.

21.     The parties hereto entered into the Agreement as described above.     Despite substantial, if not full, compliance of its obligations under the terms of the Agreement, the Defendants have denied Norfolk Southern the right to operate its Facility in violation of the Agreement. Further, despite stipulating in the Agreement that Norfolk Southern's operation of the Facility does not create a nuisance to the City of Maple Heights, Defendants have shut down the Facility and threatened to arrest and cite its workers in the future for conducting their normal operations.

6

22.     Norfolk Southern has suffered and is continuing to suffer irreparable injury as a result of the Defendants' actions, particularly when the Defendants have no authority to regulate or condition operation of the Facility according to the terms of the Agreement and federal law. Unless the Defendants are preliminarily and permanently enjoined from 1) issuing citations to or arresting Plaintiff or any of its employees, agents or contractors for generating noise at the Facility; and 2) otherwise prohibiting, interfering with, delaying, obstructing or regulating Norfolk Southern's operation and/or use of the Facility, Norfolk Southern will continue to be irreparably harmed and suffer economic loss, which is not currently capable of being calculated, and which results from the coerced use of a less economical and less efficient means of coordinating intermodal transport of cargo in, within and through the State of Ohio and throughout the eastern United States. Norfolk Southern will also continue to be irreparably harmed by the threat of facing civil lawsuits from customers to which it has contractual commitments.

23.     Norfolk Southern has no adequate remedy at law for the injuries alleged above.

24.     Enjoining Defendants from 1) issuing citations to or arresting Plaintiff or any of its employees, agents or contractors for generating noise at the Facility; and 2) otherwise prohibiting, interfering with, delaying, obstructing or regulating Norfolk Southern's operation and/or use of the Facility would cause insignificant, if any, injury to Defendants. Indeed, the operation of the Facility has provided Defendants and will continue to provide Defendants with certain economic benefits, including but not limited to tax revenues, local employment opportunities and derivative benefits to tributary local enterprises.

25.     Injunctive relief will not disserve the public interest because the public will benefit from the economical and more efficient means of coordinating intermodal transport of cargo through

7

the State of Ohio. Norfolk Southern is losing and will lose substantial business and foregoing necessary efficiency because of the Defendants' past, present and foretold future actions.

26.     Unless Defendants are temporarily restrained and preliminarily and permanently enjoined from prohibiting Norfolk Southern's use and operation of its Facility, Norfolk Southern will be irreparably harmed for which it has no remedy at law. The harm has already been incurred with the shut down of the Facility. Future harm is imminent in the form of anticipated citations, possible arrests and shut downs of the Facility.

## COUNT II

## BREACH OF CONTRACT

27.     Norfolk Southern incorporates by reference Paragraphs 1 through 26 of its Verified Complaint as if fully set forth herein.

28.     On November 3, 2000, Norfolk Southern and Defendants entered into the aforementioned Agreement.

29.     Norfolk Southern has fulfilled all of its obligations pursuant to the terms of the Agreement.

30.     Defendants have breached the terms of the Agreement by shutting down the Facility on June 14, 2002, threatening to cite, fine and jail Norfolk Southern's employees (and contractors) for generating noise at the Facility and otherwise by interfering with, delaying, obstructing and/or regulating Norfolk Southern's use and operation of the Facility.

31.     As a direct and proximate result of the breach of the Agreement by Defendants, Norfolk Southern has sustained and will sustain in the future significant damage, which Norfolk Southern is entitled to recover from Defendants.

## COUNT III

8

## TORTIOUS INTERFERENCE WITH CONTRACT

32.     Norfolk Southern incorporates by reference Paragraphs 1 through 31 of its Verified Complaint as if fully set forth herein.

33.     On June 14, 2002, Defendants intentionally caused City of Maple Heights police officers to obstruct and prohibit Norfolk Southern's use and operation of its Facility.

34.     As such, Defendants are intentionally interfering with the transportation contracts and business relationships between Norfolk Southern and its customers and its contractors.

35.     There is no justification or privilege for the intentional misconduct by Defendants.

36.     Norfolk Southern has suffered and will continue to suffer damages as a direct and proximate result of Defendants' tortuous interference with contracts and business relationships.

### COUNT IV

### FEDERAL PREEMPTION - ICCTA

37.     Norfolk Southern incorporates by reference Paragraphs 1 through 36 as if fully set forth herein.

38.     The Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 10101 *et seq.* ("ICCTA"), which became effective on January 1, 1996, amended certain sections of Title 49 of the United States Code, which, among other things, had the effect of completely preempting state and local regulation of railroads on matters which were vested exclusively with a Surface Transportation Board ("STB") created by the statute.

39.     Pursuant to the ICCTA, the STB is given exclusion jurisdiction over interstate and intrastate rail transportation. 49 U.S.C. § 10501(a)(2)(A).  More specifically, 49 U.S.C. § 10501(b) states as follows:

> (b)     The jurisdiction of the [STB] over –

9

> (1) transportation by rail carriers, and the remedies provided [by Part A of ICCTA] with respect to rates, classifications, rules (including car services, interchange, and other operating rules), practices routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, *operation*, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or *facilities*, even if the tracks are located, or intended to be located, entirely in one State,
>
> is exclusive.  Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or state law.

49 U.S.C. § 10501(b)(1) & (2)(emphasis added).

40. ICCTA defines "railroad" to include, "a switch, spur, track, terminal, terminal facility, and a freight depot, yard, and ground, used or necessary for transportation." 49 U.S.C. § 10102(6)(C).

41. ICCTA defines "transportation" to include, among other things, "a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning the use" and the "services related to that movement . . ." 49 U.S.C. § 10102(9)(A) & (B).

42. Regulation of the operation and use of the Facility by Norfolk Southern is within the exclusive jurisdiction of the STB.

43. The Defendants do not have the authority to regulate the operation or use of railroad services and facilities in the City of Maple Heights and, therefore, have no authority over Norfolk Southern's operation and use of the Facility. The Defendants' regulatory actions in prohibiting

10

Norfolk Southern's use and operation of its Facility constitutes an attempt to regulate transportation by rail carriers and the operation of Norfolk Southern's rail facilities. Consequently, the Defendants' actions are in violation of the ICCTA and are, thus, preempted by reason of the Supremacy Clause of the Constitution of the United States, Article VI, Clause 2.

44. The City of Maple Heights' Noise Ordinance, as applied to Norfolk Southern, is federally preempted by the ICCTA.

45. The Defendants' anticipated actions in citing Norfolk Southern, its employees, agents or contractors for generating noise are federally preempted by the ICCTA.

### COUNT V

### FEDERAL PREEMPTION - NCA

46. Norfolk Southern incorporates by reference Paragraphs 1 through 45 of its Verified Complaint as if fully set forth herein.

47. The Noise Control Act, 42 U.S.C. § 4901, *et seq.* ("NCA"), provides maximum noise levels for equipment and facilities of rail carriers engaged in interstate commerce at 42 U.S.C. § 4916, entitled "Railroad Noise Emission Standards". Federal rail industry noise regulations enforced under the NCA are found at 40 CFR § 201, *et seq.*

48. The NCA contains a preemption provision which reads:

> "[A]fter the effective date of a regulation under this section applicable to noise emissions . . ., no State or political subdivision thereof may adopt or enforce any standard applicable to noise emissions resulting from the operation of the same equipment or facility of such carrier unless such standard is identical to a standard . . . prescribed by any regulation under this section."

42 U.S.C. § 4916(c)(1).

49.     The City of Maple Heights' Noise Ordinance is not based on federal noise standards and is not identical to the federal noise standards as applied to railroads.  Further, Plaintiff's activities at the Facility do not violate the federal noise regulations under the NCA.

50.     The NCA, as applied to Norfolk Southern and the use of its equipment and facilities, preempts the City of Maple Heights' Noise Ordinance and any actions by the Defendants to enforce the ordinance against Norfolk Southern.

WHEREFORE, plaintiff Norfolk Southern Railway Company prays for judgment in its favor as follows:

Count I -- For an Order temporarily restraining and preliminarily and permanently enjoining Defendants from prohibiting, interfering with, delaying, obstructing and/or regulating Norfolk Southern's operation and use of the Facility;

Count II – For a declaratory judgment that Defendants are in breach of the aforementioned Agreement, and for compensatory damages in an amount in excess of $75,000, plus interests, costs and attorneys fees.

Count III -- For compensatory damages in an amount in excess of $75,000, plus interests, costs and attorneys fees.

Count IV – For a declaratory judgment that the Interstate Commerce Commission Termination Act of 1995 preempts the City of Maple Heights' Noise Ordinance as applied to Norfolk Southern and preempts the Defendants' regulation of railroad services and facilities; therefore, the defendants are without authority to prevent, condition, or interfere with Norfolk Southern's operation and use of the Facility;

Count V – For a declaratory judgment that the Noise Control Act preempts the City of Maple Heights' Noise Ordinance as applied to Norfolk Southern and therefore, the Defendants are without authority to regulate Norfolk Southern's production of noise at its Facility.

Respectfully submitted this **26** day of **July**, 2002.

_____

**THOMAS E. DOVER (0016765)**
**JOSEPH J. SANTORO (0068294)**
**1501 Euclid Avenue**
**7th Floor, Bulkley Building**
**Cleveland, OH 44115**
**(216) 241-5310**
**Attorneys for Plaintiff**

**OF COUNSEL:**
**GALLAGHER, SHARP, FULTON**
**& NORMAN**

13